U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

## UNITED STATES DISTRICT COURT
## DISTRICT OF VERMONT

2010 NOV -4  AM 11: 09

BY_____ [signature]
DEPUTY CLERK

| | |
|---|---|
| PAULO SEBASTIAN MENENDEZ, On Behalf Of Himself And All Others Similarly Situated, | Civil Action No. |
| Plaintiff,- | 2: 10-cv- 273 |
| v. | CLASS ACTION COMPLAINT |
| GREEN MOUNTAIN COFFEE ROASTERS INC., LAWRENCE J. BLANFORD, FRANCES G. RATHKE, RICHARD SCOTT MCCREARY and MICHELLE V. STACY, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Paulo Sebastian Menendez ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his Class Action Complaint against Defendants, alleges upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, based on, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things: a review of the Defendants' public documents; conference calls and announcements made by Defendants; Securities and Exchange Commission ("SEC") filings; wire and press releases published by and regarding Green Mountain Coffee Roasters Inc. ("Green Mountain" or the "Company"); securities analysts' reports and advisories about the Company; and information readily obtainable on the Internet.

## NATURE OF THE ACTION

1.      This is a securities fraud class action on behalf of all persons who purchased or acquired Green Mountain securities during the period from July 28, 2010 through and including September 29, 2010 (the "Class Period"). This class action is brought under Sections 10(b) and

20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a); and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

2.      Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants (1) deceived the investing public regarding Green Mountain's business, operations, management, and the intrinsic value of Green Mountain common stock; (2) enabled Defendants to artificially inflate the price of Green Mountain shares; (3) enabled Green Mountain to sell $250 million of Company shares to Lavazza, while Defendants were in possession of material, adverse, non-public information about the Company; (4) enabled Green Mountain insiders to sell millions of dollars of their privately held Green Mountain shares while in possession of material, adverse, non-public information about the Company; and, (5) caused Plaintiff and other members of the Class to purchase Green Mountain common stock at artificially inflated prices.

3.      On September 28, 2010, Green Mountain disclosed that the Company was the target of an SEC investigation into its revenue recognition practices and its relationship with its largest fulfillment vendor, M. Block & Sons. It also announced that due to an accounting error made in 2007 its income was overstated by $7.6 million. On the following trading day, the stock plummeted 16% to $31.06.

4.      As a result of Defendants' wrongful acts and omissions, and the precipitous declines in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

2

## JURISDICTION AND VENUE

5.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

6.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

7.     Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b).  Green Mountain maintains its principal place of business in this District and many of the acts and practices complained of herein occurred in substantial part in this District.

8.     In connection with the challenged conduct, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

**Plaintiff**

9.     Plaintiff as set forth in his certification attached hereto purchased Green Mountain securities during the Class Period and was damaged thereby.

**Defendants**

10.     Defendant Green Mountain is a Delaware Corporation with its principal executive offices located at 33 Coffee Lane, Waterbury, VT 05676.  Green Mountain roasts Arabica coffees and offers various coffee selections.  The Company's products include single-origin, estate, certified organic, Fair Trade, signature blends, and flavored coffees sold under the Green Mountain Coffee Roasters brand.  Green Mountain serves offices, supermarkets, and

3

convenience stores, and operates a direct mail business. The aggregate number of shares of Green Mountain securities outstanding as of August 2, 2010 is approximately 132 million shares. Green Mountain is actively traded on the Nasdaq under the ticker symbol "GMCR."

11.     Defendant Lawrence J. Blanford ("Blanford") was at all relevant times herein the Company's President and Chief Executive Officer. During the Class Period, Defendant Blanford signed and certified the Company's Form 10-Q.

12.     Defendant Frances G. Rathke ("Rathke") was at all relevant times herein the Company's Chief Financial Officer, Treasurer and Vice President. During the Class Period, Defendant Rathke certified the Company's Form 10-Q.

13.     Defendant Richard Scott McCreary ("McCreary") was at all relevant times herein the President of the Company's Specialty Coffee Business Unit. During the Class Period, Defendant McCreary sold over $6.9 million of Green Mountain stock.

14.     Defendant Michelle V. Stacy ("Stacy") was at all relevant times herein the President of the Company's Keurig Inc. unit. During the Class Period, Defendant sold over $1.5 million of Green Mountain stock.

15.     The Defendants referenced above in ¶¶ 11-14 are sometimes referred to herein as the "Individual Defendants."

**SUBSTANTIVE ALLEGATIONS**

**Background**

16.     Green Mountain, together with its subsidiaries, is engaged in the specialty coffee and coffee maker businesses. It sells over 200 whole bean and ground coffee selections, cocoa, teas and coffees in K-Cup portion packs, Keurig single-cup brewers, and other accessories. The Company operates in two business segments: Specialty Coffee business unit (SCBU) and Keurig business unit (Keurig). As of November 13, 2009, the Company acquired the Timothy's World

4

Coffee brand and the licensed Emeril's brand. In May 2010, Green Mountain Coffee Roasters, Inc. acquired Diedrich Coffee, Inc.

**Defendants' False and Misleading Statements**

17.     On July 28, 2010, the Company issued a press release announcing its financial results for the third quarter ended June 26, 2010.  The release stated in relevant part:

GREEN MOUNTAIN COFFEE ROASTERS, INC. REPORTS CONTINUED STRONG SALES AND EARNINGS GROWTH FOR FISCAL 2010 THIRD QUARTER

> 64% Net Sales Growth Driven by Success of Keurig® Single-Cup Brewing System; Q3 2010 GAAP EPS of $0.13 and Non-GAAP EPS of $0.19; Company Provides Initial Outlook For Fiscal 2011
>
> WATERBURY, VT (July 28, 2010) -Green Mountain Coffee Roasters, Inc., (NASDAQ: GMCR) today announced its fiscal 2010 third quarter results for the thirteen weeks ended June 26, 2010.
>
> Net sales for the third quarter of fiscal 2010 increased 64% to $311.5 million as compared to $190.5 million reported in the third quarter of fiscal 2009. **According to Generally Accepted Accounting Principles ("GAAP"), net income for the third quarter of fiscal 2010 totaled $18.6 million, or $0.13 per fully diluted share.**
>
> **Excluding transaction-related expenses incurred in the quarter, and the resulting tax effect of reversing the tax benefit associated with previously incurred acquisition-related expenses, the Company's non-GAAP net income for the third quarter of fiscal 2010 was $25.8 million, or $0.19 per diluted share, representing an increase of 82% from $14.1 million, or $0.12 per diluted share, in the third quarter of fiscal 2009.**
>
> The Company completed its acquisition of Diedrich Coffee Inc. ("Diedrich") on May 11, 2010 for $35 per share of common stock in a transaction with a total value of approximately $300 million.
>
> ***
>
> The Company completed a three-for-one stock split during the third quarter, effected in the form of a stock dividend. Shareholders of record at the close of business on May 10, 2010 received two additional shares of common stock for every one share of common stock held on that date.
>
> ***
>
> Costs, Margins and Income

Third quarter 2010 gross profit increased to 35.2% of total net sales compared to 33.6% for the corresponding quarter in 2009. This was as a result of higher manufacturing gross margin derived from the increase in volume of the Company's manufactured K-Cups as a percentage of total system volume.

During the third quarter, the Company experienced continued higher levels of warranty expense and sales returns related to a quality issue associated with certain brewer models produced primarily in late calendar 2009. As previously disclosed, the Company implemented hardware and software changes which it believes has corrected the issue. The Company reached agreement with its suppliers and will recover approximately $6 million as reimbursement related to this issue. This recovery was reflected in the third quarter cost of sales as a reduction to warranty expense and substantially offsets the higher warranty expense and sales returns costs incurred in the fiscal third quarter.

Selling, general and administrative expenses as a percentage of net sales for the third quarter were 23.0% as compared to 21.7% in the prior year. Third quarter 2010 general and administrative expenses include $4.0 million related to the Diedrich acquisition as well as the amortization of identifiable intangibles of $4.3 million due to the Company's prior acquisitions as compared to $1.5 million in the prior year third quarter.

**The Company increased its GAAP operating income by 68%, to $38.2 million, in the third quarter of fiscal 2010, as compared to $22.8 million in the year ago quarter, and improved its GAAP operating margin to 12.3% from 12.0% in the prior year period. Excluding the impact of the $4.0 million transaction-related expenses in the third quarter of fiscal 2010, the Company's non-GAAP operating income was up 85% to $42.2 million and represented 13.5% of sales compared to $22.8 million, or 12.0% of sales in the prior year.**

Interest expense was $1.5 million in the third quarter of fiscal 2010, compared to $1.1 million in the prior year quarter.

**Income before taxes for the third quarter of fiscal 2010 increased 70% to $36.7 million as compared to $21.7 million in the third quarter of fiscal 2009.**

The Company's tax rate for the fiscal third quarter was 49.5% as compared to 34.7% in the prior year quarter reflecting the tax effect of the recognition of the estimated total $12 million non-deductible acquisition-related expenses incurred during the Company's first, second and third quarters of fiscal 2010 for the Diedrich acquisition which closed during the Company's fiscal third quarter.

*** 

**Lawrence J. Blanford, GMCR's President and CEO, said, "In our fiscal third quarter, through the strong efforts of all our employees, we delivered**

6

**excellent results on our key financial performance metrics including revenue, gross margin, operating margin and net income.** We have now achieved 11 consecutive quarters of better than 40 percent net sales growth. For the first nine months of fiscal 2010 we have produced net sales growth of 70% and non-GAAP earnings per share growth of 89% over the same period for fiscal year 2009."

"Continued execution of our strategic business initiatives, including most recently, our acquisition of Diedrich, is driving GMCR's growth and enabling us to advance adoption and awareness of our growing portfolio of compelling brands," said Blanford. "We believe the inherent strength of our business model, combined with our passionate employees, the strong support of our business partners and our fervent belief that we can transform the way the world views business are key drivers behind our growth and success. "

Blanford concluded, "The coming holiday buying season is shaping up to be another exciting opportunity for us to help more consumers discover and enjoy outstanding beverages with the convenience and choice of the Keurig Single-Cup brewing system. We are looking for a strong kickoff to our fiscal year 2011 and are providing our initial fiscal year 2011 estimate for sales growth in a range of between 44% to 50% and earnings per share of$1.15 to $1.20."

\*\*\*

Business Outlook and Other Forward-Looking Information

Fourth Quarter and Fiscal Year 2010

With one quarter remaining, the Company has refined its outlook for its fiscal year 2010 and is providing its first estimates for its fourth quarter of fiscal 2010. It now expects:

Total fiscal fourth quarter consolidated net sales growth of 58% to 63% resulting in total fiscal 2010 consolidated net sales growth of 66% to 68%, compared to the prior estimate of 62% to 65%.

Total fiscal 2010 K-Cup portion packs shipped system-wide by all Keurig licensed roasters to increase in the range of 73% to 76%, compared to prior estimate of 73% to 78%.

Fiscal fourth quarter non-GAAP operating margin in the range of 13.0% to 13.5%, resulting in a total fiscal 2010 non-GAAP operating margin in the range of 12.1% to 12.5% excluding acquisition-related transaction expenses.

Fiscal 2010 interest expense of $5.5 million to $6.5 million.

A tax rate of 39.2% for the fiscal year excluding the tax impact of expenses related to the Timothy's and Diedrich acquisitions.

Fiscal fourth quarter fully diluted non-GAAP earnings per share in the range of $0.18 to $0.20 per share, resulting in total fiscal 2010 fully diluted non-GAAP earnings per share in the range of $0.69 to $0.71 per share, excluding any acquisition-related transaction expenses. The fully diluted non-GAAP earnings per share estimate of $0.69 to $0.71 for the 2010 fiscal year includes $15 million pre-tax or $0.07 per diluted share non-cash amortization expenses related to the identifiable intangibles of the Company's acquisitions.

Capital expenditures for fiscal 2010 in the range of $120 to $140 million, as compared to prior estimates in the range of $105 to $125 million.

Depreciation and amortization expenses in the range of $44 to $46 million for fiscal year 2010, including $15 million for amortization of identifiable intangibles, up from prior estimates of $40 to $44 million.

First Issue of Company Estimates for Fiscal Year 2011

The company also is providing its first estimates for fiscal year 2011:

Total consolidated net sales growth of 44% to 50%.

Total K-Cup portion packs shipped system-wide to increase in the range of 64% to 68%.

Fully diluted earnings per share in the range of $1.15 to $1.20 per share, representing an increase in the range of 62% to 74% over fiscal year 2010's fully diluted non-GAAP earnings per share estimate range of $0.69 to $0.71 per share. The fiscal 2011 estimate includes approximately $22 million, or approximately $0.09 per share, of non-cash amortization expenses related to the identifiable intangibles mentioned above.

18.     Following this release, shares of Green Mountain closed at $31.36, up from a

closing price of $28.67 the day before.

19.     In an August 10, 2010 press release, Defendants announced that they had entered

into a $250 million stock purchase agreement with Lavazza. The release stated in relevant part:

GREEN MOUNTAIN COFFEE ROASTERS, INC. ANNOUNCES $250 MILLION COMMON STOCK PURCHASE AGREEMENT WITH LUIGI LAVAZZA S.p.A

Companies to Work Toward Development, Marketing and Distribution Agreement

WATERBURY, Vt., and TORINO, Italy, August 10, 2010 -Green Mountain Coffee Roasters, Inc. (GMCR) (NASDAQ: GMCR) and Luigi Lavazza S.p.A (Lavazza) announced the companies have entered into a $250 million common stock purchase agreement. Under terms of the agreement, Lavazza has agreed to purchase $250 million in aggregate purchase price of newly issued shares of GMCR's $0.10 par value Common Stock, or approximately 7% of GMCR's current outstanding shares, at a price per share equal to the 60 day volume weighted average price ("VWAP") at closing minus 7.5%. This investment requires approval under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 and is expected to close in September 2010.

* **

The common stock purchase agreement provides that Lavazza (1) not sell the purchased shares for a year and then thereafter only in open-market transactions or to certain institutional investors, (2) vote these shares in concert with the Company's Board, (3) may have an observer at the Company's Board meetings and, (4) in the future and under certain circumstances, a right to designate a Board member. In addition, the Agreement contains a 5-and-one-half-year customary standstill period, subject to certain exceptions after a one-year period, including the right to purchase additional shares up to 15% of the Company's outstanding shares.

***

"Lavazza's investment in GMCR reflects their confidence in our strategy, vision and execution and provides enhanced financial flexibility to fund our growth and future enabling initiatives," said Lawrence J. Blanford, president and CEO, Green Mountain Coffee Roasters, Inc. "We have developed an effective working relationship with Lavazza and, based on the impressive quality of the Lavazza people and technology, we believe there is strong potential for a commercial alliance between GMCR and Lavazza that will leverage our complementary coffee systems and respective geographic strengths."

20.     On August 10, 2010, the Company filed a quarterly report on Form 10-Q for the

third quarter ended June 30, 2010 with the SEC, which was signed by Defendants Blanford and

Rathke.   The 10-Q included statements concerning the Company's Significant Accounting

Policies, the Basis of its Accounting Presentation, and the sufficiency of internal controls, which

stated in relevant part:

**The accompanying unaudited consolidated financial statements have been prepared in accordance with generally accepted accounting principles for**

**interim financial information, the instructions to Form 10-Q, and Rule 10-01 of Regulation S-X.** Accordingly, they do not include all of the information and footnotes required by generally accepted accounting principles for complete consolidated financial statements.

In the opinion of management, all adjustments considered necessary for a fair presentation of the interim financial data have been included. Results from operations for the thirteen and thirty-nine week periods ended June 26, 2010 are not necessarily indicative of the results that may be expected for the fiscal year ending September 25, 2010.

The September 26, 2009 balance sheet data was derived from audited financial statements but does not include all disclosures required by accounting principles generally accepted in the United States of America. For further information, refer to the consolidated financial statements and the footnotes included in the annual report on Form 10-K for Green Mountain Coffee Roasters, Inc. for the fiscal year ended September 26, 2009. Throughout this presentation, we refer to the consolidated company as the "Company".

The Company has revised the classification of certain information presented in its fiscal 2009 Unaudited Consolidated Balance Sheet to conform to its fiscal 2010 presentation.

Item 4. **Controls and Procedures**

As of June 26, 2010, the Company's management with the participation of its Chief Executive Officer and Chief Financial Officer conducted an evaluation of the effectiveness of the design and operation of the Company's disclosure controls and procedures pursuant to Rule 13a-15 and 15d-15 under the Securities Exchange Act of 1934 (the "Exchange Act"). **Based on that evaluation, our Chief Executive Officer and Chief Financial Officer concluded that the Company's disclosure controls and procedures (as defined in Rule 13a-15 of the Exchange Act) are effective.**

There have been no changes in the Company's internal control over financial reporting during the most recent fiscal quarter that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting.

Emphasis added.

21.    In addition, pursuant to SOX, the Form 10-Q contained signed certifications by

Defendants Blanford and Rathke, stating that the financial information contained in the 10-Q was

accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

22. The statements referenced above in ¶¶ 17, 19, 20, and 21 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them that: (1) the Company improperly recognized revenue; (2) the Company was using an incorrect gross margin percentage to eliminate the inter-company markup for certain products at its Keurig business, which was decreasing cost of sales; (3) the Company's internal operational or financial controls were inadequate; (4) as a result of the foregoing, Green Mountain's financial statements were not fairly presented in conformity with GAAP and were materially false and misleading; and (5) based on the foregoing, Defendants lacked a basis for their positive statements about the Company, its prospects and growth.

**The Truth Slowly Begins to Emerge**

23. On September 28, 2010, the Company filed a form 8-K with the SEC which stated that it completed a sale of 8,566,649 shares of its common stock to Luigi Lavazza, for an aggregate purchase price of $250 million, pursuant to the Common Stock Purchase Agreement, dated as of August 10, 2010 (the "SPA"), by and between the Company and Lavazza. Under terms of the agreement, Lavazza purchased $250 million of newly-issued shares of Green Mountain, at a price per share equal to the 60-day volume weighted average price ("VWAP") at closing minus 7.5%.

24. Buried at the bottom of the 8-K was the stunning revelation that the Company was the subject of an SEC investigation, which it had known about as early as September 20, 2010, into its revenue recognition practices and relationship with M. Block & Sons, a fulfillment

vendor, and that the Company was also expected to take a restatement charge due to an

overstatement of net income in 2007. The 8-K stated in relevant part:

> SEC inquiry
>
> On September 20, 2010, the staff of the SEC's Division of Enforcement informed
> the Company that it was conducting an inquiry and made a request for a voluntary
> production of documents and information. Based on the request, the Company
> believes the focus of the inquiry concerns certain revenue recognition practices
> and the Company's relationship with one of its fulfillment vendors. The
> Company, at the direction of the audit committee of the Company's board of
> directors, is cooperating fully with the SEC staff's inquiry.
>
> ***
>
> Intercompany adjustment correction
>
> In connection with the preparation of its financial results for its fourth fiscal
> quarter, the Company's management discovered an immaterial accounting error
> relating to the margin percentage it had been using to eliminate the inter-company
> markup in its K-Cup inventory balance residing at its Keurig business unit.
> Management discovered that the gross margin percentage used to eliminate the
> inter-company markup resulted in a lower margin applied to the Keurig ending
> inventory balance effectively overstating consolidated inventory and understating
> cost of sales. Management determined that the accounting error arose during
> fiscal 2007 and analyzed the quantitative impact from that point forward to June
> 26, 2010.

25.    As a result of the disclosures, Green Mountain securities dropped 16.1% to close

at $31.06 on September 29, 2010—its biggest one day decline in eight years.

## CLASS ACTION ALLEGATIONS

26.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

Procedure 23(a) and (b)(3) on behalf of a Class consisting of all those who purchased or

otherwise acquired Green Mountain securities, including purchasers of common stock, call

options and sellers of put options during the Class Period (the "Class"); and were damaged

thereby. Excluded from the Class are Defendants herein, the officers and directors of the

Company, at all relevant times, members of their immediate families and their legal

12

representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

27.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Green Mountain securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Green Mountain or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

28.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

29.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

30.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Green Mountain;
- whether the Individual Defendants caused Green Mountain to issue false and misleading financial statements during the Class Period;

13

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Green Mountain securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

31.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

32.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Green Mountain securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Green Mountain securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

33.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

14

## CLAIMS FOR RELIEF

### COUNT I

#### (Against All Defendants For Violations of
#### Section 10(b) And Rule 10b-5 Promulgated Thereunder)

34.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

35.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

36.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Green Mountain securities; and (iii) cause Plaintiff and other members of the Class to purchase Green Mountain securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

37.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were

15

designed to influence the market for Green Mountain securities and options. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Green Mountain's finances and business prospects.

38.     By virtue of their positions at Green Mountain, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

39.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Green Mountain securities from their personal portfolios.

40.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Green Mountain, the Individual Defendants had knowledge of the details of Green Mountain internal affairs.

41.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of

16

Green Mountain.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Green Mountain's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Green Mountain securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Green Mountain's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased Green Mountain securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities, and/or upon statements disseminated by Defendants and were damaged thereby.

42.     During the Class Period, Green Mountain securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased shares of Green Mountain securities and options at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased said shares and options, or would not have purchased them at the inflated prices that were paid. At the time of the purchases by Plaintiff and the Class, the true value of Green Mountain securities and options were substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Green Mountain securities and options declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

43.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

44.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

### COUNT II

#### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

45.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

46.     (a)     During the Class Period, the Individual Defendants participated in the operation and management of Green Mountain, and conducted and participated, directly and indirectly, in the conduct of Green Mountain's business affairs.  Because of their senior positions, they knew the adverse non-public information about Green Mountain's misstatement of income and expenses and false financial statements.

(b)     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Green Mountain's financial condition and results of operations, and to promptly correct any public statements issued by Green Mountain which had become materially false or misleading.

(c)     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Green Mountain disseminated in the marketplace during the Class Period concerning Green Mountain's results of operations.  Throughout the Class Period,

the Individual Defendants exercised their power and authority to cause Green Mountain to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Green Mountain within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Green Mountain securities and options.

47.     Each of the Individual Defendants, therefore, acted as a controlling person of Green Mountain. By reason of their senior management positions and/or being directors of Green Mountain, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause Green Mountain to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Green Mountain and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

48.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Green Mountain.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury of all issues that may be so tried.

Dated: November 3, 2010

**CULLENBERG & TENSEN**

By: _____
Arend Tensen Bar Number 2881
85 Mechanic Street
Third Floor, Suite 2, Bldg C
Lebanon, N.H. 03766
603-448-7100

*Local Counsel*

**POMERANTZ HAUDEK GROSSMAN
& GROSS LLP
Marc I. Gross
Jeremy A. Lieberman
Tamar A. Weinrib
100 Park Avenue, 26th Floor
New York, New York 10017**
Telephone: **(212) 661-1100**
Facsimile: **(212) 661-8665**

**POMERANTZ HAUDEK GROSSMAN
& GROSS LLP
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Phone: (312) 377-1181
Facsimile: (312) 377-1184**

**BRONSTEIN GEWIRTZ &
GROSSMAN LLC**
Peretz Bronstein

20

60 East 42nd Street
New York, NY 10165
Phone: (212) 697-6484
Facsimile: (212) 697-7296

**Counsel for Plaintiff**